IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BRADLEY KEITH STEVENS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. CIV-14-705-F |
| | ) | |
| JIM FARRIS, Warden, | ) | |
| | ) | |
| Respondent.[1] | ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his state court conviction. (Petition, ECF No. 1). Respondent has filed his Response to Petition for Writ of Habeas Corpus, (Response, ECF No. 8). Petitioner has also filed a Brief in Support of Writ of Habeas Corpus, (Petitioner's Brief, ECF No. 12). For the reasons set forth below, it is recommended that the Petition be **DENIED**.

### I. PROCEDURAL BACKGROUND AND ISSUES PRESENTED

On June 30, 2011, Petitioner was convicted of Rape by Instrumentation and Lewd Molestation and sentenced to prison. (ECF No. 1:1). Following the conviction, Petitioner filed a Motion for New Trial and a hearing was held. Transcript of Motion for New Trial, *State of Oklahoma v. Stevens*, Case No. CF-2008-312 (Kay Co. Mar. 19, 2012) (TR. Motion for New Trial). The motion was overruled and Mr. Stevens filed a

---

[1] In the Petition, Mr. Stevens named the Attorney General of the State of Oklahoma as a Respondent. (ECF No. 1:1). But the only proper Respondent is Jim Farris, the warden at the Joseph Harp Correctional Center where Mr. Stevens is in custody. *See* 28 U.S.C. § 2254, Rule 2(a).

direct appeal. (Brief of Appellant, ECF No. 8-1). There, Mr. Stevens raised the following arguments:

> 1. The trial court erred in excluding the testimony of OSBI agent Rick Brown regarding prior false allegations because it constituted an abuse of discretion and, as a sanction, was unduly harsh given the key role of the credibility of the witness;
>
> 2. The trial court erred in failing to grant the motion for new trial when it had before it credible evidence of actual innocence establishing fabrication of the evidence not previously known or discoverable; and
>
> 3. To the extent the witnesses offered in support of the motion for new trial could have been discovered prior to trial or counsel committed any willful discovery violation, appellant received ineffective assistance of trial counsel.

(ECF No. 8-1).

On July 2, 2013, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed Petitioner's conviction. (OCCA Summary Opinion, ECF No. 8-3). On July 7, 2014, Mr. Stevens timely filed his habeas Petition. (ECF No. 1).

## II. FACTUAL BACKGROUND/TESTIMONY

Petitioner was convicted of sexual misconduct allegedly committed in the early morning hours of April 16, 2008, against minors M.R. and C.O. At that time, Mr. Stevens was the legal guardian of then 16-year-old M.R. who lived in Mr. Stevens' home with her then 17-year-old boyfriend, T.C. Transcript of Jury Trial Volume II of III, Case No. CF-2008-312 (Kay Co. June 29, 2011) at 184-87 (Trial TR. Vol. II 184-87). On the night

2

of April 15, 2008, M.R.'s younger sister, then 10-year-old C.O., was also staying the night at Mr. Stevens' home. (Trial TR. Vol. II 186-87).

### A. Testimony from Alleged Victim C.O.

C.O. testified that on April 15, 2008, she went to sleep downstairs at Mr. Stevens' home, and M.R. and T.C. went to sleep upstairs. (Trial TR. Vol. II 149-54). C.O. awoke to Mr. Stevens touching her genitalia and putting his finger inside her. (Trial TR. Vol. II 154-157). At least twice, Mr. Stevens turned C.O. toward him and asked if he could lay down with her. (Trial TR. Vol. II 158-159). C.O. said no, turned away, and Mr. Stevens left and proceeded upstairs. (Trial TR. Vol. II 158-159). After Petitioner went upstairs, C.O. saw T.C. leave the residence. (Trial TR. Vol. II 159-60). A few minutes later, C.O. stated that M.R. was yelling and running downstairs and Mr. Stevens was saying he "just wanted someone to love." (Trial TR. Vol. II 159-60). C.O. told M.R. that Mr. Stevens "did it to [her] too." (Trial TR. Vol. II 161).

### B. Testimony from T.C.

On the night of April 15, 2008, T.C. and M.R. went to bed and M.R. had fallen asleep while he watched T.V. (Trial TR. Vol. II 223). In the early morning hours of April 16, 2008, T.C. heard someone enter the residence and about ten minutes later, Mr. Stevens came into M.R. and T.C.'s room. (Trial TR. Vol. II 225, 231). Prior to seeing Petitioner, T.C. had heard "moans" coming from downstairs for approximately 10 minutes. (Trial TR. Vol. II 226). T.C. stated that Mr. Stevens came to the bed, smiled, and slumped halfway on the bed and halfway on the floor, with one hand on top of the

bed, and one hand underneath the bed comforter. (Trial TR. Vol. II 225-27). T.C. felt uncomfortable, so he left to his father's residence. (Trial TR. Vol. II 225-27, 231). About 10 minutes after T.C. arrived home, Mr. Stevens was beating on his door and T.C. woke up his father. (Trial TR. Vol. II 233-34). By this time, T.C. was receiving text messages from M.R. asking for help. (Trial TR. Vol. II 227-230). Text messages entered into evidence confirmed that M.R. texted T.C. stating "My little sister is hurt, and so am I. Brad is saying he didn't do it. Please help us." (Trial TR. Vol. II 230). T.C. and his father called the police and drove to Mr. Stevens' home. (Trial TR. Vol. II 228). The police were at Petitioner's residence when T.C. arrived. (Trial TR. Vol. II 228, 234).

### C. Testimony from Alleged Victim M.R.

On the night of April 15, 2008, M.R. and T.C. went to bed upstairs and C.O. went to sleep downstairs. (Trial TR. Vol. II 190-92). M.R. awoke to a hand rubbing her genitalia and a finger being inserted inside her. (Trial TR. Vol. II 193-95) At this time, T.C. was not present. (Trial TR. Vol. II 195). M.R.'s pants and underwear had been pulled down, her legs were being lifted in the air, and she felt a sticky substance on her hand she identified as "sperm." (Trial TR. Vol. II 193-95, 199, 205). M.R. saw Mr. Stevens on top of her, masturbating and ejaculating with his pants halfway down, exposing his buttocks. (Trial TR. Vol. II 200, 205).

M.R. punched Mr. Stevens and he asked M.R. "Don't you love me?" (Trial TR. Vol. II 196). M.R. ran downstairs and she found C.O. who said, "He did it to me." (Trial TR. Vol. II 195). Mr. Stevens tried to get M.R. to go with him to T.C.'s house, but she

4

would not. (Trial TR. Vol. II 198). M.R. texted T.C. for help and T.C. called her, stating that Mr. Stevens had been to his home, beating on his door. (Trial TR. Vol. II 195, 197, 198, 207). He and his father had called the police and were on their way to Mr. Stevens' residence. (Trial TR. Vol. II 195, 197, 198, 207). The police arrived at Mr. Stevens' home approximately ten minutes later. (Trial TR. Vol. II 208).

### D. Testimony from Officer Shane Pruett

Officer Shane Pruett arrived at Mr. Stevens' home in the early morning hours of April 16, 2008. Transcript of Jury Trial Volume III of III, Case No. CF-2008-312 (Kay Co. June 30, 2011) at 30 (Trial TR. Vol. III 30). When he arrived, Officer Pruett stated that M.R. and C.O. were "screaming, bawling, and hyperventilating, tears coming down their face. And they kept saying over and over, Please help us, please help us." (Trial TR. Vol. III 30, 34).

### E. Testimony from Officer Regeneia Van Arsdale

At the police station, Officer Regeneia Van Arsdale assisted in the investigation involving Mr. Stevens. (Trial TR. Vol. III 51). Upon seeing C.O. and M.R., Officer Van Arsdale stated that both girls were crying and it was difficult to understand them. (Trial TR. Vol. III 51). Both girls told Officer Van Arsdale that Mr. Stevens had penetrated their vaginas with his finger. (Trial TR. Vol. III 60). Officer Van Arsdale proceeded to interview and audiotape Mr. Stevens regarding the events. (Trial TR. Vol. III 57). According to Officer Van Arsdale, Mr. Stevens stated that he had gone out for some drinks and when he arrived home, he went to C.O.'s bed, woke her up, talked to her,

5

then went upstairs to M.R.'s room to ask her when C.O. needed to be at school the next day. (Trial TR. Vol. III 57-59, 72-73). Mr. Stevens stated that T.C. was on the bed with M.R. sleeping beside him. (Trial TR. Vol. III 69, 73). Petitioner stated he must have fallen asleep in M.R.'s room because he remembers waking up there, beside her bed, with her yelling at him. (Trial TR. Vol. III 57-58, 73-74). Mr. Stevens left his home and went to T.C.'s father's residence. (Trial TR. Vol. III 75).

### III. STANDARD OF REVIEW

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), this Court's power to grant habeas corpus relief to state prisoners is limited. *Snow v. Sirmons,* 474 F.3d 693, 696 (10th Cir. 2007). Under the AEDPA, the standard of review applicable to each claim depends upon how that claim was resolved by the state courts. *Alverson v. Workman,* 595 F.3d 1142, 1146 (10th Cir. 2010) (citing *Snow,* 474 F.3d at 696). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Under the AEDPA, a petitioner is entitled to federal habeas relief only if the merits-based adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "The

question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster,* 563 U.S. 170, (2011). "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 185. "It is the petitioner's burden to make this showing and it is a burden intentionally designed to be 'difficult to meet.'" *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (citation omitted).

This Court first determines "whether the petitioner's claim is based on clearly established federal law, focusing exclusively on Supreme Court decisions." *Hanson v. Sherrod*, 797 F.3d 810, 824 (10th Cir. 2015). "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme Court.]" *Thaler v. Haynes*, 531 U.S. 43, 47 (2010). If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of clearly established federal law. *See Owens,* 792 F.3d at 1242.

"A state court's decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a

7

set of materially indistinguishable facts.'" *Id.* (citations omitted). Notably, "'[i]t is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be 'diametrically different' and 'mutually opposed' to the Supreme Court decision itself.'" *Id.* (citation omitted).

The "'unreasonable application' prong requires [the petitioner to prove] that the state court 'identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the prisoner's case.'" *Id.* (citations and internal brackets omitted). On this point, "the relevant inquiry is not whether the state court's application of federal law was *incorrect*, but whether it was 'objectively unreasonable.'" *Id.* (citations omitted, emphasis in original). So, to qualify for habeas relief on this prong, a petitioner must show "'there was no reasonable basis' for the state court's determination.'" *Id.* at 1242-43 (citation omitted).

In sum, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington,* 562 U.S. at 101–02 (2011). Relief is warranted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id.* at 102. The deference embodied in § 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the

8

state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citation omitted).

## IV. GROUND ONE

In ground one, Mr. Stevens alleges that the trial court abused its discretion by excluding evidence from a witness who would have testified regarding prior false sexual allegations which had allegedly been made by M.R. (ECF No. 1:5). The evidence was excluded pursuant to a Motion in Limine filed by the State the day before trial. According to Petitioner, the trial court's actions violated his 5th, 6th, and 14th Amendment rights. (ECF No. 1:3, 5); (ECF No. 8-1:15-18).

### A. The Motion in Limine

One day before trial, defense counsel Thomas Salisbury notified the State that he intended to offer testimony from Oklahoma State Bureau of Investigation Agent Rick Brown that M.R. had made prior false allegations of a sexual offense against a different individual. (Trial TR. Vol. II 115). On the day of trial, the State filed a Motion in Limine to exclude the evidence under Oklahoma's "rape shield law." (Trial TR. Vol. II 115-116); *see* 12 O.S. § 2412. Defense counsel opposed the motion under an exception which allows evidence of prior false allegations of sexual offenses. (Trial TR. Vol. II 116-227); 12 O.S. § 2412(B)(2).

The trial court acknowledged that the exception would apply, and ordered an in-camera hearing on the issue. (TR. Vol. II 166-182). Ultimately, however, the court sustained the Motion in Limine because Mr. Salisbury had not given the statutory

9

requisite 15-day notice of Agent Brown's testimony. (TR. Vol. II 117-125, 181-182); 12 O.S. § 2412(C)(1). On direct appeal, the OCCA affirmed, stating: "Not only did the defense fail to give the prosecution advance notice of the information, as required by law, but the information in the record before us is simply too vague and incomplete to be deemed a 'false' allegation which could materially affect the complainant's credibility." (ECF No. 8-3:2-3).

### B. The Sixth Amendment Claim

On direct appeal, Mr. Stevens alleged that the trial court's exclusion of Agent Brown's testimony violated his Sixth Amendment right to confront his accusers. (ECF No. 8-1:15-18). The Court assumes that the citation to the Sixth Amendment in ground one of the habeas petition, without further explanation, mirrors his allegation on direct appeal. But the trial court's exclusion of Agent Brown's testimony does not implicate the Sixth Amendment.

The "main and essential" purpose of the Sixth Amendment's Confrontation Clause "is to secure for the opponent the opportunity of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (internal quotation marks and citation omitted). At trial, Mr. Stevens did not attempt to cross-examine any prosecution witness, including the victim, about any prior false allegations of sexual misconduct. Instead, Mr. Stevens had attempted to present the evidence through testimony from Agent Brown, his own witness.

As a result, Mr. Stevens was not denied any opportunity for cross-examination based on the exclusion of Agent Brown's testimony. Thus, the Court should conclude that the OCCA's decision to affirm the trial court's exclusion of the evidence was neither contrary to, nor an unreasonable application of, any Supreme Court precedent applying the Sixth Amendment. *See Richmond v. Embry*, 122 F.3d 866, 871 (10th Cir. 1997) (explaining that the denial of the right to present defense-witness testimony "is a right arising not under the Sixth Amendment's Confrontation Clause but is instead one arising under the Fifth and Fourteenth Amendment right to due process . . .").

### C. The Fifth and Fourteenth Amendment Claims

"Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois,* 484 U.S. 400, 408 (1988). Mr. Stevens' right to present a defense is guaranteed by the Fifth and Fourteenth Amendments. *See Washington v. Texas,* 388 U.S. 14, 18–19 (1967) ("[t]he right to offer the testimony of witnesses . . . is in plain terms the right to present a defense . . . . This right is a fundamental element of due process of law."). Although the right to present a defense is fundamental, it is not unlimited. A defendant, for example, "must comply with established rules of procedure and evidence designed to assure both fairness and reliability." *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973)). Thus, the accused "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor,* 484 U.S. at 410. Just as a defendant's right to present a defense is limited, however, so too are the states'

rulemaking powers. The exclusion of defense evidence on the basis of a state evidentiary or procedural rule "abridge[s] an accused's right to present a defense," where the restriction is "'arbitrary' or 'disproportionate to the purposes' [it is] designed to serve," and the evidence "implicate[s] a sufficiently weighty interest of the accused." *United States v. Scheffer,* 523 U.S. 303, 308–09 (1998) (quoting *Rock v. Arkansas,* 483 U.S. 44, 56 (1987)).

To establish a violation of his right to present a complete defense, Petitioner must show that evidence would have been material and favorable to his defense. *United States v. Valenzuela–Bernal,* 458 U.S. 858 (1982). Material evidence is that which is exculpatory—evidence that if admitted would create reasonable doubt that did not exist without the evidence. *Id.* at 868.

Thus Petitioner must show that if admitted, Agent Brown's testimony would have created reasonable doubt that had not exited without the evidence. The OCCA determined that the Petitioner had failed to meet this burden and this determination was reasonable.

At a hearing in-camera on the State's Motion in Limine, Agent Brown testified that two days before trial, he reviewed his files and confirmed that M.R. had made "certain allegations against a Mr. Caudillo" which were later recanted and proved to be unfounded. (Trial TR. Vol. II 169). As noted by the OCCA, Agent Brown's statement was defense counsel's only offer of proof. (ECF No. 8-3:3, n.2). The OCCA also stated: "The record contains no testimony from anyone having personal knowledge of the actual

12

claim; nor does it contain any particulars as to the time frame, the nature of the allegation, or other surrounding facts." *Id.* On this basis, the OCCA found that the information in the record was not exculpatory, stating: "the information in the record before us is simply too vague and incomplete to be deemed a 'false' allegation which could materially affect the complainant's credibility." (ECF No. 8-3:2-3).

The question on habeas review is whether it is possible that fair-minded jurists could disagree that the OCCA's decision was inconsistent with the holding of any Supreme Court decision. The Tenth Circuit Court of Appeals addressed similar circumstances in *Dunn v. Scott*, 117 Fed. Appx. 49 (10th Cir. Nov. 16, 2004) (unpublished op.). In *Dunn*, the defendant argued that the State suppressed statements from witnesses about other possible suspects. *Id.* at 53. The OCCA concluded that the evidence was not exculpatory because it "merely indicated additional people who may have killed the victims." *Id.* at 54. On habeas review, the Court held that the OCCA's determination that the evidence was not exculpatory, was reasonable, stating:

> Neither of these statements provided specific information concerning other possible suspects. . . . Also, . . . [petitioner] has failed to establish how disclosure of these statements would have helped his defense. We therefore conclude the OCCA's determination that the evidence was not exculpatory was not contrary to, or an unreasonable application of, Supreme Court precedent.

*Id.*

*Dunn v. Scott* is applicable to the instant case. Like in *Dunn*, the evidence was deemed not exculpatory because the information in the record concerning Agent

Brown's testimony lacked specificity. (ECF No. 8-3:2-3). Additionally, Mr. Stevens has failed to meet his burden to establish how Agent Brown's statements would have helped his defense. Accordingly, this Court should conclude that the OCCA's affirmance on ground one is neither contrary to, nor an unreasonable application of Supreme Court precedent. As a result, habeas relief should be denied.

## V.  GROUND TWO

In ground two, Mr. Stevens alleges that the trial court abused its discretion in denying his Motion for New Trial in violation of his 5th, 6th, and 14th Amendment rights. Petitioner's argument is two-fold: (1) that he was denied a "full hearing" on the Motion for New Trial when the trial court disallowed two witnesses to testify, and (2) that the trial court erred in denying his Motion for New Trial on the basis that the witnesses were discoverable prior to trial. (ECF No. 1:3, 7).

### A.  The Motion for New Trial

Following his conviction, Mr. Stevens learned of three witnesses who allegedly had direct knowledge that the victims and their mother had fabricated the charges which formed the basis for the conviction. (ECF No. 1:7). Based on the information, Petitioner filed a Motion for a New Trial and a hearing was held. (TR. Motion for New Trial). During the hearing, one witness fully testified regarding her knowledge of the allegedly fabricated charges. (TR. Motion for New Trial 4-42). Shortly after the second witness took the stand, the State objected on grounds of relevance. (TR. Motion for New Trial 45). In response to the objection, defense counsel David Slane stated that

the testimony of the three witnesses was relevant, as it would "weigh into motive and bias" of M.R. for fabricating the allegations against Mr. Stevens. (TR. Motion for New Trial at 46-47).

The trial court sustained the objection, stating that impeachment evidence was not a basis on which to grant a new trial and that such testimony would not have likely changed the outcome of the trial. (TR. Motion for New Trial 46). No further testimony was taken from this witness. Defense counsel called the third witness to testify, and immediately the State objected on grounds of relevance and the fact that the witness had been discoverable before trial. (TR. Motion for New Trial 48). The trial court sustained the objection on both grounds and the witness did not testify. (TR. Motion for New Trial 49-51).

### B. The Sixth Amendment Claim

As in ground one, the Court should assume that Mr. Stevens' reference to the Sixth Amendment in ground two invokes the Confrontation Clause under that amendment, as Petitioner had argued on direct appeal. (ECF No. 1:3, 7); (ECF No. 8-1:9-15). But ground two does not present a valid Sixth Amendment claim, as the argument concerns the introduction of testimony from Petitioner's own witnesses, which would not implicate his Sixth Amendment rights of cross-examine under the Confrontation Clause. Accordingly, the Court should consider his allegations as a challenge to his right to present a defense under the Fifth and Fourteenth Amendments.

## C. The Fifth and Fourteenth Amendment Claims

Mr. Stevens argues that the trial court erred in disallowing testimony from two witnesses at the hearing on his Motion for New Trial and overruling the motion on the merits. (ECF No. 1:3, 7). But Mr. Stevens' argument is based on the misconception that the trial court's ruling was premised on a finding that the witnesses were discoverable prior to trial. (ECF No. 1:7). Although the trial court noted that the third witness, J.P., had been discoverable prior to trial, the court's ultimate ruling was based on a finding that the impeachment testimony would not have changed the outcome of the trial if it had been allowed. (TR. Motion for New Trial 46, 49, 51). On appeal, the OCCA affirmed, stating:

> [W]e review the trial court's ruling on Appellant's timely-filed motion for new trial, based on newly discovered evidence, for abuse of discretion. Appellant was required to show: (1) the evidence could not have been discovered before trial with reasonable diligence; (2) the evidence was material to the issues at trial; (3) the evidence as not cumulative to what was presented at trial; and (4) the evidence created a reasonable probability that, had it been introduced at trial, it would have changed the outcome. The information Appellant proffered was not, in our view, material to the issues in the trial. Considering that the complainants' accounts in this case were mutually corroborative of each other, and further corroborated by other evidence, this "new" information was also not outcome-determinative. The trial court did not abuse its discretion in denying the motion.

(ECF No. 8-3:2) (internal citations omitted).

The OCCA's conclusion upholding the trial court was not based on a finding that the witnesses had been discoverable prior to trial. (ECF No. 8-3:2). As a result, even if, as Mr. Stevens alleges, the witnesses had *not* been discoverable prior to trial, the trial

16

court's ruling and the OCCA's decision would not have been affected because both lower courts' decisions were based on the fact that the witness' testimony would not have changed the outcome of the trial.

On habeas review, the court must determine whether the OCCA's holding was contrary to, or an unreasonable application of, Supreme Court precedent. *Harrington v. Richter,* 562 U.S. 86, 101–02 (2011). As stated, to answer this question, the relevant inquiry is whether Mr. Stevens can establish that had the evidence been introduced at trial, a reasonable probability exists that the outcome would have been different.

The OCCA found that this standard had not been met because the complainants' accounts in this case were mutually corroborative of each other, and further corroborated by other evidence. (ECF No. 8-3:2). Indeed, a review of the testimony from M.R., C.O., and T.C. reveals consistency in their version of how the events unfolded that night. Furthermore, two police officers testified regarding M.R. and C.O.'s demeanor on the night of the alleged crimes—that the girls were crying and screaming hysterically. And a statement from Mr. Stevens corroborates the entirety of the events as told by M.R., C.O., and T.C., with the exception of the sexual assaults.

In light of this evidence, there is not a reasonable possibility that the impeachment testimony from the three witnesses at the Motion for New Trial would have affected the trial's outcome. As a result, the OCCA's decision was not contrary to, nor an unreasonable application of, Supreme Court precedent. Accordingly, habeas relief should be denied on ground two.

## VI. GROUND THREE

In ground three, Mr. Stevens alleges ineffective assistance of counsel, claiming that his defense attorney at trial had failed to adequately investigate his case. (ECF No. 1:3, 8). According to Petitioner, if his attorney had been diligent in his investigation, he would have uncovered: (1) the impeachment evidence witnesses at the Motion for New Trial and (2) Agent Brown, whose testimony had been excluded pursuant to the Motion in Limine. (ECF No. 1:3, 8).

On direct appeal, the OCCA rejected this claim, stating:

> On a claim of ineffective assistance of counsel, the defendant must establish both (1) deficient performance by counsel and (2) a reasonable probability that it affected the outcome of the trial. Strickland v Washington, 466 U.S. 668, 697 (1984). . . . Because we have already concluded that it would not have been outcome determinative, we need not consider whether trial counsel was deficient in failing to discover and present the evidence discussed in Proposition 1. As to the evidence excluded by the trial court (Proposition 2): The record is insufficient to determine the admissibility and impeachment value of the information in question. We cannot find prejudice based on this scant record.

(ECF No. 8-3:2) (internal citation omitted).

As noted by the OCCA, the standard for proving ineffective assistance of counsel was set forth in *Strickland v Washington*, 466 U.S. 668 (1984). But on habeas review, the Court does not examine whether the elements of *Strickland* have been met. *Harrington v. Richter,* 562 U.S. 770, 785 (2011). Instead, the pivotal question is whether the state court's application of the *Strickland* standard was reasonable.

Here, the OCCA found the absence of prejudice because the evidence that Petitioner believes his attorney failed to discover would not have changed the outcome

of the trial. (ECF No. 8-3:2-3). This was a reasonable interpretation of *Strickland* in light of the additional findings that the evidence would not have been exculpatory. Thus, the Court should deny habeas relief on ground three.

## VII. RECOMMENDATION

It is recommended that Mr. Stevens' Petition for Writ of Habeas Corpus be **DENIED**.

## VIII. NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **March 17, 2016**, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## IX. STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on February 29, 2016.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE